# United States District Court, Northern District of Illinois

JS-6

| Name of Assigned Judge or Magistrate Judge | Judge Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 01 C 2038 | DATE | 7/23/2001 |
| CASE TITLE | Todd Trost, et al vs. Jason Bauer, et al | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

Defendants' Motion to Dismiss or Transfer for Lack of Jurisdiction and Improper Venue (doc. #4)

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial [set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   Defendants' Motion to Dismiss for Lack of Jurisdiction (doc. #4) is **GRANTED.** Defendants' Motion to Transfer for Improper Venue (doc. #4) **is dismissed as moot.** This case is **dismissed** without prejudice.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | number of notices | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | JUL 24 2001 | |
| | Notices mailed by judge's staff. | | date docketed | |
| | Notified counsel by telephone. | | docketing deputy initials | |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| JHC | courtroom deputy's initials | LO-1 FILED FOR DOCKETING 01 JUL 23 PM 9: 56 Date/time received in central Clerk's Office | mailing deputy initials | |

Document Number
13

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

**DOCKETED**

'JUL 2 4 2001

| | | |
|---|---|---|
| TODD TROST, et. al | ) | |
| Plaintiff, | ) | |
| | ) | No. 01 C 2038 |
| v. | ) | |
| | ) | JUDGE WILLIAM J. HIBBLER |
| JASON BAUER, & | ) | |
| AZURADISC, INC., | ) | |
| Defendants. | ) | |

## MEMORANDUM AND OPINION

This Court has before it Defendants' Motion to Dismiss or Transfer for Lack of Jurisdiction and Improper Venue (doc. #4). Plaintiffs brought their Declaratory Judgment Action claiming that they have not infringed and are not infringing on several of Defendants' patents. Plaintiffs claim this Court has personal jurisdiction over Defendants by their presence in this district, the operation of a website in this district, and sending infringement letters to Plaintiff in this District. Plaintiffs also claim that there is an actual case or controversy between the parties because the aforementioned letters placed them in reasonable apprehension of impending litigation.

Defendants claim lack of personal jurisdiction over Jason Bauer and Azuradisc, lack of subject matter jurisdiction and improper venue pursuant to Rules 12 (b)(2), (b)(1), and (b)(3), of the Federal Rules of Civil Procedure. For the reasons set forth herein, Defendants' Motion to Dismiss for Lack of Jurisdiction (doc #4) is **GRANTED**. Defendants' Motion to Transfer for Improper Venue (doc. #4) is **dismissed as moot.**

# BACKGROUND

Plaintiff Todd Trost is an Illinois resident and the remaining three Plaintiffs, Damaged Disc Repair, Inc. ("Damaged Disk"), Orland Video West, Inc. ("Video West") and Specialty Store Services, Inc. ("Specialty Store") are Illinois corporations, doing business in the state (collectively known as "Plaintiffs"). Defendant Jason Bauer ("Bauer") is an Arizona resident and Defendant Azuradisc, Inc. ("Azuradisk") is an Arizona corporation, with its principal place of business in Arizona (collectively known as "Defendants").

In late 1997, Marshall Weinstein, a principal of Plaintiff Specialty Store, telephoned Bauer regarding advertising Defendants' CD scratch removal machines in Weinstein's trade magazine. The machines are used to repair and remove scratches on CD's, DVD's and other such discs.[1] Eventually Weinstein visited Bauer's home in Arizona, inspected the machines, discussed the engineering details, and read the business plans. Sometime thereafter, Weinstein returned to his home in Illinois and began to make his own disc repair machines, selling them through Specialty Store.

On January 23, 2001, Defendants sent Plaintiffs correspondence stating that they may be in violation of the patents involving the use, manufacture, and distribution of Plaintiffs' compact disc repair machines. Plaintiffs' retained counsel and sent a letter of inquiry to Defendants' counsel on February 14, 2001, to which they allegedly received no response. On March 22, 2001 Plaintiffs filed suit in this Court.

---

[1] Defendants' machines are currently covered by three different patents.

## LEGAL STANDARDS

### A.  Subject Matter Jurisdiction

The Federal Rules of Civil Procedure provide for dismissal of claims when the district court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1).  On a motion to dismiss for lack of subject matter jurisdiction, the plaintiff bears the burden of proving facts sufficient to establish personal jurisdiction. *Michael J. Neuman & Assoc. v. Florabelle Flowers, Inc.* 15 F.3d 721, 723-24 (7th Cir. 1994).  Subject-matter jurisdiction generally should be considered before personal jurisdiction, even though a district court may dismiss for lack of personal jurisdiction without determining whether subject-matter jurisdiction exists. *Central States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 939 n.2 (7th Cir.2000); *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 578, 587-88 (1999).

In cases involving the Declaratory Judgment Act, 28 U.S.C. § 201, a federal court can issue a declaratory judgment only if an "actual controversy" exists at the time the suit was filed. *International Harvester Co. v. Deere & Co.*, 623 F.2d 1207, 1210 (7th Cir. 1980).  To demonstrate an actual controversy, Plaintiffs must show (1) that they have acted, or are prepared to act in a way that could constitute infringement, and (2) Defendants' conduct creates a reasonable apprehension of suit on Plaintiffs' part. *Serco Services Co., L.P. v. Kelley Co., Inc.*, 51 F.3d 1037, 1038 (Fed. Cir. 1995).  It is clear that this Court possesses discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites. *Wilton v. Seven Falls Co*, 515 U.S. 277, 282-83 (1995) (citing *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491 (1942)).

## B. Personal Jurisdiction

The Federal Rules of Civil Procedure provide for dismissal of claims when the district court lacks personal jurisdiction. Fed. R. Civ. P. 12(b)(2). In a case based on diversity of citizenship, a federal district court in Illinois may exercise personal jurisdiction over a non-resident defendant, only if an Illinois state court would have jurisdiction. *Michael J. Neuman & Assoc. v. Florabelle Flowers, Inc.*, 15 F.3d 721, 723-24 (7th Cir. 1994); *Dehmlow v. Austin Fireworks*, 963 F.2d 941, 945 (7th Cir. 1992). When reviewing a motion to dismiss, this Court takes all jurisdictional allegations in the complaint as true, unless controverted by Defendants' affidavits. *Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987). Any conflicts between the parties' affidavits must be resolved in Plaintiffs' favor. *Id.* To survive a motion to dismiss, Plaintiffs have the burden of making a prima facie case for personal jurisdiction. *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997); *IDS Life Ins. Co. v. SunAmerica, Inc.*, 958 F. Supp. 1258, 1264 (N.D. Ill. 1997), *vacated in part*, 136 F.3d 537 (7th Cir. 1998) (In order to survive a defendants' motion to dismiss, the plaintiff must demonstrate that Illinois law permits jurisdiction and that the exercise of jurisdiction will not offend due process).

Federal Circuit law is controlling as to issues that are unique to patent law. "A procedural issue that is not itself a substantive patent law issue is … governed by Federal Circuit law if it bears an essential relationship to matters committed to [the Federal Circuit's] exclusive jurisdiction by statute, or if it clearly implicates the jurisprudential responsibilities of [the Federal Circuit] in a field within its exclusive jurisdiction." *McCook Metals L.L.C., v. Alcoa Inc.*, 192 F.R.D. 242, 251 (N.D. Ill. 2000) (quoting *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 803 (Fed. Cir. 2000). Additionally, "[f]or procedural issues in a patent case that are not unique to patent law, courts apply

4

the law of the circuit in which the district court sits." *Id.* In determining whether jurisdiction exists over an out of state defendant, this Court must defer to the law of the Federal Circuit with regard to the federal constitutional due process analysis of the defendant's contact with the forum state. *Graphic Controls Corp. v. Utah Medical Products, Inc.*, 149 F.3d 1382, 1386 (Fed. Cir. 1998). However, this Court must look to relevant Illinois state and federal law in interpreting the meaning of Illinois' long-arm statute. *Id.*

### 1. Illinois Long-Arm Statute

This Court must determine whether Plaintiffs have cleared the three hurdles to personal jurisdiction, state statutory law; state constitutional law; and federal constitutional law, when making its determination. Important to this Court's analysis is Illinois' long-arm statute governing the jurisdiction of courts which provides that an Illinois court 'may ... exercise jurisdiction on any ... basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2-209(c). The Seventh Circuit has explained that the Illinois long-arm statute is coextensive with federal due process requirements such that

> if the contacts between the defendant and Illinois are sufficient to satisfy the requirements of due process, then the requirements of both the Illinois long-arm statute and the United States constitution have been met, and no other inquiry is necessary.

*Klump v. Duffus*, 71 F.3d 1368, 1371 (7th Cir. 1995). Therefore, because the Illinois long-arm statute authorizes personal jurisdiction to the extent of constitutional limits, the three inquiries collapse into two, one state and one federal. *RAR*, 107 F.3d at 1276. If jurisdiction is improper under the Illinois or United States' Constitutions, then this Court cannot exercise jurisdiction over Defendants. *Jamik, Inc. v. Days Inn of Mount Laurel*, 74 F. Supp.2d 818, 821 (N.D. Ill. 1999).

## 2. Federal Due Process

The Federal Circuit, like the Seventh Circuit applies the "'minimum contacts' standard of *International Shoe* [*Co. v. Washington*, 326 U.S. 310 (1945)]and its progeny to questions of personal jurisdiction in federal question cases, such as those arising under the patent laws." *Akro Corp. v. Luker*, 45 F.3d 1541, 1545 (Fed. Cir. 1995) (citing cases). Under *International Shoe*, federal due process requires Defendants to have "certain minimum contacts with [Illinois] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe*, 326 U.S. at 316. Whether a defendant has maintained minimum contacts in each particular case is dependent on whether the plaintiff asserts specific or general jurisdiction. Specific jurisdiction refers to jurisdiction over a defendant in a suit "arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8 (1984). General jurisdiction is for suits neither arising out of nor related to the defendant's contacts, and is permitted only where the defendant has "continuous and systematic general business contacts" with the forum state. *Id.* at 416.

### a. Specific Jurisdiction

To determine whether specific jurisdiction exists, this Court must decide whether Defendants have "purposefully established minimum contacts within the forum state" and whether those contacts would make personal jurisdiction reasonable and fair under the circumstances. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-77 (1985). This Court's first inquiry is whether Defendants could reasonably anticipate being haled into court in this state. *Id.* at 474-75. To answer this question, this Court must determine if Defendants purposefully availed themselves of the privilege of conducting activities in Illinois. *Id.* This Court cannot exercise personal jurisdiction over Defendants "solely

as a result of random, fortuitous, or attenuated contacts." *Id.* Next, this Court must consider whether exercising personal jurisdiction over Defendants is reasonable such that it comports with traditional notions of fair play and substantial justice. This Court must consider the following five factors, (1) the burden on the defendant of litigating in the forum; (2) the interests of the forum; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interests of the states in furthering fundamental substantive policies. Once minimum contacts have been established, "often the interest of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." *Id.*

### b. General Jurisdiction

General jurisdiction arises when the non-resident defendant has "continuous and systematic general business contacts" with the forum state. *RAR*, 107 F.3d at 1277 (citing *Helicopteros Nacionales*, 466 U.S. at 416). This Court must look to Defendants' additional contacts with the forum state beyond those related to the action being brought against them to determine whether general personal jurisdiction exists. *Dehmlow v. Austin Fireworks*, 963 F.2d 941, 947 n.6 (7th Cir. 1992). However, Defendants' actions must be intentional, substantial, and continuous, rather than inadvertent, trivial, or sporadic. *Asset Allocation & Mgmt. Co. v. Western Employers Ins. Co.*, 892 F.2d 566, 570 (7th Cir. 1989).

### ANALYSIS

### A. Lack of Subject Matter Jurisdiction

Plaintiffs assert that they have alleged sufficient facts to establish subject matter jurisdiction for their Declaratory Judgment Action because an actual controversy exists between the parties, and

Defendants' actions placed them in a reasonable apprehension that they would be sued for infringement. Defendants claim that no actual controversy exists because the letters sent to Plaintiffs were mere inquiries concerning Plaintiffs' possible infringement. Based on the facts presented, this Court declines to exercise jurisdiction over the Declaratory Judgment claim even though an actual controversy exists.

This Court has jurisdiction over this cause of action in accordance with the Declaratory Judgement Act. "A declaratory judgment action affords a measure of relief to the potential infringer who is under the shadow of threatened infringement litigation." *Serco Srvs. Co., L.P. v. Kelley Co., Inc.*, 51 F.3d 1037, 1038 (Fed. Cir. 1995). Under the Act, an actual controversy between the parties must exist for this Court to exercise jurisdiction over the Declaratory Judgment claim. "[T]he presence of an 'actual controversy' within the meaning of the statute depends on whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having averse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 810 (Fed. Cir. 1996) (citations omitted). However, should this Court determine that an actual controversy exists, it is entirely within its discretion to decline exercising jurisdiction. *Id.* This Court should consider whether Plaintiffs actually produced an allegedly infringing product and whether Defendants' conduct actually created an objectively reasonable apprehension of suit on Plaintiffs' part. *Id.* at 811.

Plaintiffs claim that they were placed in reasonable apprehension of an infringement suit based on letters dated January 23, 2001. (Pl.'s Exs. 1 and 2.) Plaintiffs allege that Defendants threatened to sue for them patent infringement. Defendants counter that the letters were not threatening and were sent merely to inquire into Plaintiffs' actions. Based on the language of the two

letters, this Court finds that an actual controversy existed. Plaintiffs quote specific language from the letters in their reply that they claim placed in them in apprehension of an infringement suit. In reading Defendants' letter to Plaintiffs, it is clear that Defendants state that in the event that Plaintiffs infringe the patents, Defendants intend to take all steps legally permitted.[2] The Federal Circuit has made it clear that "where all that is present is negotiation unaccompanied by threats of legal action, the setting is not sufficiently adverse to create a justiciable controversy. That principle, however, is inapplicable in a case such as this one, where the patentee has made explicit references to the prospect of initiating legal action." *EMC Corp.*, 89 F.3d at 812. Accordingly, this Court is satisfied that an actual controversy exists under the Declaratory Judgment Act.

However, even though this Court has found an actual controversy, an exercise of jurisdiction is not required and will only be reversed upon a finding of an abuse of discretion. *Id.* In fact, "as long as [this Court] acts in accordance with the purposes of the Declaratory Judgment Act and the principles of sound judicial administration, [it] has broad discretion to refuse to entertain a declaratory judgment action." *Id.* at 813-14. In response to Defendants' January 23, 2001 letter, Plaintiffs sent a letter stating that they would evaluate Defendants' claims and respond to them at the end of their investigation.[3] Plaintiffs claim that Defendants failed to respond to their letter. Less than six weeks after responding the Defendants letter, Plaintiffs filed suit. This Court may take into

---

2 Specifically, Defendants' letter states, "[p]lease be advised that any infringement of these patents is a matter of grave concern to us. We intend to take all steps legally permitted to enforce our clients' intellectual property. These steps may include, when necessary, resorting to litigation to ask the court's help in obtaining all monetary and injunctive relief to which our clients are entitled. In fact, one such lawsuit is in progress now, and if you do not cooperate, your firm may be next." (Pls.' Exs. 1 & 2, Letters from Defendants to Plaintiff Trost and Weinstein of January 23, 2001, at 1.)

3 In response the Defendants' letter Plaintiffs wrote, "[w]e are presently evaluating the issues you have raised and will respond to them as soon as we complete our evaluation." (Pls.'s Ex. 3, Letter from Plaintiffs to Defendants of February 14, 2001.)

account whether Plaintiffs' "first-filed action is initiated in an apparent attempt to pre-empt anticipated litigation and deprive the party of its choice of forum." *Solo Cup Co., v. Fort James Corp.*, No. 99 C 4724, 1999 WL 1140885, at *1 (N.D. Ill. Nov. 29, 1999) (quoting *KPR Inc. v. C & F Packing Co., Inc.*, 30 U.S.P.Q.2d 1320, 1323 (N.D. Tex. 1993)). In this case, this Court finds that Plaintiffs filed this action for declaratory judgment solely for forum shopping purposes. Plaintiffs assert that they brought this anticipatory cause of action because they had a reasonable apprehension of being sued for patent infringement. While it is true that the purpose of the Act is to alleviate Plaintiffs' necessity of waiting indefinitely for an infringement action to be filed, *KPR*, 30 U.S.P.Q.2d at 1323, the circumstances of this litigation act as a mitigation to Plaintiffs' apprehension. Plaintiffs claim that Defendants' previous suits against other competitors is evidence of its intent to sue. Yet "the fact that [Defendants have] recently filed infringement suits against other [competitors] based upon the same patents and equipment at issue in this case should also have been an indication to [Plaintiffs] that [they] would not be forced to wait indefinitely for [Defendants] to file suit." *Id.* The facts in this case are clear, although Plaintiffs assured Defendants that a review of the issues would be done and the results of the review would be forwarded to Defendants, Plaintiffs instead filed suit less than six weeks after sending its February 14, 2001 letter.[4] Accordingly, based upon the facts presented, this Court finds that even though a real controversy exists, Plaintiffs raced to the courthouse to Defendants' detriment. *Solo Cup*, 1999 WL 1140885, at *2. Therefore, this Court declines to exercise subject matter jurisdiction over the Declaratory Judgment claim.

---

4 This Court anticipates that Plaintiffs will claim that in their February 14th letter, they requested further information from Defendants and when Defendants failed to reply they filed suit. However, nowhere in the letter do Plaintiffs inform Defendants that failure to submit the additional information will result in an anticipatory lawsuit.

## B. Lack of Personal Jurisdiction

Defendants also argue that Plaintiffs have failed to demonstrate that personal jurisdiction exists. Defendants claim that they are not doing business in Illinois, their website does not specifically target Illinois or its residents, and the infringement letters do not establish minimum contacts such that this Court should exercise personal jurisdiction over the Defendants. Plaintiffs counter that this Court should exercise personal jurisdiction over Defendants based upon the infringement letters and solicitation of sales in Illinois. After careful review of the evidence and considering all well-plead facts in Plaintiffs' favor, this Court finds that Plaintiffs have failed to meet their burden of demonstrating sufficient minimum contacts which necessitate this Court's exercise of personal jurisdiction.

Plaintiffs' burden is to establish that jurisdiction exists under the Illinois long-arm statute. *Inamed Development Co. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001). Illinois' long-arm statute permits the exercise of jurisdiction over claims which arise out of the defendant's transaction of business, or commission of a tort in Illinois, as well as, performance of a contract substantially connected with Illinois. 735 ILCS 5/2-209(a)(1) and (2). The "transaction of business test" may be satisfied by an isolated act, as long as, Plaintiffs' claims arise out of that act. *Jacobs/Kahan & Co. v. Marsh*, 740 F.2d 587, 591 (7th Cir. 1984). Additionally, Illinois state courts have jurisdiction over a non-resident defendant "doing business" in the state. 735 ILCS 5/2-209(b). A corporation is "doing business" in Illinois if it engages in regular activities in Illinois, "not occasionally or casually, but with a fair measure of permanence and continuity." *Michael J. Neuman*, 15 F.3d at 724 (citations and quotations omitted). "The decision as to whether a corporation's in-state activities are sufficiently permanent and continuous to qualify as 'doing business' is to be made on a case-by-case

basis and depends on the unique situation in particular case." *IDS*, 958 F. Supp. At 1265. The Seventh Circuit has defined the concept of "doing business" as "those nonresident businesses that are so like resident businesses, insofar as the benefits they derive from state services are concerned, that it would give them an undeserved competitive advantage if they could escape having to defend their actions in the local courts." *IDS*, 136 F.3d at 540-41.

Should Plaintiffs satisfy their burden of demonstrating minimum contacts, then Defendants bear the burden of demonstrating that this Court's exercise of jurisdiction will not offend due process. *Inamed*, 249 F.3d at 1360. Due process measures the limits of personal jurisdiction by the strength of the relationship between the defendant and the forum state. The due process inquiry encompasses two parts, minimum contacts and fair play and substantial justice. First, the defendant must have 'purposely established 'minimum contacts' in the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). Second, the exercise of jurisdiction over the defendant must not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

The required minimum contacts are established in one of two ways, when defendant has sufficient "contacts of a continuous and systematic nature," with the forum, *Helicopteros Nacionales De Columbia, S.A. v. Hall*, 466 U.S. 408, 416 (1984), or the cause of action before the court relates to, or arises out of, defendant's contacts with that forum state. *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977). These minimum contacts must "result from actions by the defendant himself that create a 'substantial connection' with the forum State." *Burger King*, 471 U.S. at 475. The well-settled rule is that the defendant must have "purposefully availed" himself of the privilege of conducting activities within the forum state such that he should "reasonably anticipate being haled into court

there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 91980). Defendants may not be haled into a jurisdiction "solely as a result of random, fortuitous or attenuated contacts" or stem from the "unilateral activity of another party or third person." *Burger King*, 471 U.S. at 475.

A defendant may be subject to either specific or general jurisdiction under the "minimum contacts" test. *LSI Indus. v. Hubbell Lighting*, 232 F.3d 1369, 1375 (Fed. Cir. 2000). Specific jurisdiction exists if Defendants purposefully directed their activities at Illinois residents, Plaintiffs' claims arise out of or are related to those activities, and the assertion of personal jurisdiction is reasonable and fair. *Hollyanne v. TFT, Inc.*, 199 F.3d 1304, 1307-08 (Fed. Cir.1999); *RAR*, 107 F.3d at 1277. General jurisdiction exists when a defendant maintains "continuous and systematic" contacts with the forum state even when the cause of action has no relation to those contacts. It is Defendants' conduct in relation to Illinois, not the unilateral actions of Plaintiffs, which determine jurisdiction. *Dehmlow v. Austin Fireworks*, 963 F.2d 941, 946 (7th Cir. 1992). In this case, Plaintiffs have failed to allege either specific or general jurisdiction, therefore, this Court will analyze their claims under both options.

### 1. Personal Jurisdiction Over Jason Bauer

Bauer claims that this Court lacks personal jurisdiction over him as he has had no contact whatsoever with the forum state. Plaintiffs counter that Illinois has personal jurisdiction over Bauer for two reasons: (1) the letter sent to Plaintiffs was sent on behalf of Bauer and Azuradisc, and (2) Bauer's sole proprietorship, CD Saver, had dealings in Illinois between 1997 and 1999, before Azuradisc was incorporated. In light of the facts before it, this Court finds that it lacks personal jurisdiction over Defendant Bauer.

In order for this Court to exercise personal jurisdiction over Bauer, Plaintiffs must

13

demonstrate that jurisdiction is proper under the Illinois long-arm statute and personal jurisdiction satisfies constitutional standards of due process and fairness. First, The Illinois Supreme Court has interpreted the Illinois long-arm statute as being more limited than due process would allow in some situations. One such limitation is the fiduciary shield doctrine. The fiduciary shield doctrine prevents personal jurisdiction over an individual whose contacts with Illinois are solely the result of acts as a representative or fiduciary of the corporation. *Plastic Film Corp. v. Unipac, Inc.*, 128 F. Supp.2d 1143, 1146 (N.D. Ill. 2001). The fiduciary shield doctrine will not prevent jurisdiction over an individual where the corporation is the individual's alter ego, however, just because an individual is a member of management or holds controlling positions in a corporation does not nullify the protection of the fiduciary shield. *Kula v. J.K. Schofield & Co.*, 668 F. Supp. 1126, 1129 (N.D. Ill. 1987). This is because Illinois recognizes that corporate officers, directors, and shareholders are separate and distinct from the corporation. *Id.* Second, in determining whether the defendant purposefully availed itself of a particular forum for purposes of the Fourteenth Amendment, courts in this circuit have considered whether the defendant solicited the transaction in question within the proposed forum. *Federated Rural Elec. Ins. Corp. v. Inland Power and Light Co.*, 18 F.3d 389, 394 (7th Cir.1994). The handful of letters and phone calls that passed between Plaintiffs and Bauer is not enough to clear the hurdle. *Helicopteros Nacionales*, 466 U.S. at 416; *Young v. Colgate-Palmolive Co.*, 790 F.2d 567, 570 (7th Cir.1986); *Lakeside Bridge & Steel Co. v. Mountain State Construction Co.*, 597 F.2d 596, 598, 604 (7th Cir.1979); *Madison Consulting Group v. South Carolina*, 752 F.2d 1193, 1203 n. 18 (7th Cir.1985) (dictum). This is true because even though sending an infringement letter falls within the ambit of the long-arm statute, additional contacts are necessary to satisfy due process. *E.J. McGowan, Inc. v. Biotechnologies, Inc.*, 736 F.

Supp. 808, 812 (N.D. Ill. 1990); *International Honeycomb Corp. v. Transtech Service Network, Inc.*, 742 F. Supp. 1011, 1013 (N.D. Ill.1990). Sending the infringement letter to a plaintiff in Illinois does not confer personal jurisdiction over a non-resident defendant. *Publications Intern. v. Simon & Schuster*, Inc., 763 F. Supp. 309, 313 n. 4 (N.D. Ill. 1991) (citing *E.J. McGowan*, 736 F. Supp. at 812.) In fact, the Federal Circuit has recently stated that "the sending of an infringement letter, without more, is insufficient to satisfy the requirements of due process when exercising jurisdiction over an out-of-state patentee." *Inamed*, 249 F.3d at 1361. Furthermore, courts in this circuit have frequently disagreed as to whether a defendant's small volume of sales in the forum state is sufficient to establish jurisdiction. A review of the cases in which a defendant's small volume of sales within the forum state subjected it to the exercise of personal jurisdiction suggests that courts exercise jurisdiction only where the defendant also engaged in the active solicitation of business or made direct advertisements targeting the forum state. *Michael J. Neuman*,15 F.3d at 725; *Kavo America Corp. v. J.F. Jelenko & Co.*, No. 00 C 1355, 2000 WL 715602, at *4 (N.D. Ill. June 2, 2000); *Deere & Co. v. Howard Price Turf Equipment, Inc.*, No. 99 C 4169, 1999 WL 1101215, at *3 (N.D. Ill.,1999 Dec. 1, 1999); *Milligan v. Soo Line R. Co.*, 775 F. Supp. 277, 280 (N.D. Ill.1991).

Because Plaintiffs have failed to meet their burden of establishing a prima facie case of personal jurisdiction over Bauer, this Court will decline from exercising personal jurisdiction over him. It is arguable that resolving all disputed facts in Plaintiffs' favor leads this Court to the conclusion that the fiduciary shield doctrine does not apply to Bauer because he is a high-ranking corporate officer of Azuradisc, *R-Five, Inc. v. Sun Tui, Ltd*, No. 94 C 4100, 1995 WL 548633, at *5 (N.D. Ill. Sept. 12, 1995); *Brujis v. Shaw*, 876 F. Supp. 975, 980 (N.D. Ill. 1995), however, little doubt exists as to whether Bauer had minimum contacts with Illinois to the extent that maintaining personal jurisdiction over him would not offend traditional notions of fair play and substantial justice. *Helicopteros Nacionales*, 466 U.S. at 416. Plaintiffs claim that because Bauer is the inventor and sole owner of the patents at issue, the letters sent to Plaintiffs were on his behalf, and

the fact that he did business as CD Saver before he incorporated Azuradisc, leads to the conclusion that he has purposefully directed his activities at Illinois residents. This Court wholeheartedly disagrees with that assessment. Bauer's letters to Plaintiff are not sufficient to subject Bauer to this Court's personal jurisdiction. *Publications Intern.*, 763 F. Supp. at 313 n. 4. Furthermore, the fact that Bauer ran CD Saver as a sole proprietorship between 1997 to 1999 has no bearing on whether he should be subjected to personal jurisdiction for Azuradisc's transactions. Bauer "should have some control over - and certainly should not be surprised by - the jurisdictional consequences of [his] actions. Thus, when conducting business with a forum in one context, [Bauer] should not have to wonder whether some aggregation of other past and future forum contacts will render [him] liable to suit there." *RAR.*, 107 F.3d at 1278. Even assuming that running CD Saver could somehow subject Bauer to personal jurisdiction, Bauer has demonstrated that CD Saver and Azuradisc's combined sales made in Illinois amount to approximately 1% of those companies total sales. There is no evidence that Bauer has solicited or targeted business in Illinois on Azuradisc's behalf, and absent specific solicitation and targeting of Illinois residents, this Court is hesitant to exercise personal jurisdiction over Bauer. This is because the fact that Bauer conducted an business with an Illinois resident does not create personal jurisdiction over him. *Hot Wax, Inc. v. Stone Soap, Co.*, No. 97 C 6878, 1999 WL 183776, at *4 (N.D. Ill. March 25, 1999). Plaintiffs also point to the fact that Bauer conducted a conversation with one of Plaintiff's representatives and sent information in reference to his patents. However, Plaintiffs conveniently fail to mention that it was Specialty Store's representative who initiated the phone call and visited Bauer at his Arizona home. "[C]ontacts resulting from the 'unilateral activity' of others do not count." *Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1359 (Fed. Cir. 1998) (citing *Burger King*, 471 U.S. at 475 & n. 17). These facts are not sufficient to sustain jurisdiction over Bauer based on the well-established notion of minimum contacts under the *International Shoe* standard. In fact, based on the facts presented, Bauer's contact with Illinois falls within the realm of minuscule rather than minimum contacts.

Finally, there can be no doubt that Bauer did not have continuous and systematic contact with Illinois. Plaintiffs point to the fact that between 1997 and 1999, Bauer ran CD Saver and solicited business from Illinois residents during that time. (Pls.'s Ex. 5 at 2 ¶1). However, a review of Plaintiffs' exhibits and Bauer's affidavit do not support the allegation that Bauer did business with Illinois residents while he ran CD Saver. Even if Plaintiffs could establish that Bauer did solicit Illinois residents, the fact that those solicitations ended two years prior to suit negates any continuous and systematic contact Bauer may have had with Illinois. *Rokeby-Johnson v. Derek Bryant Ins.*, 594 N.E.2d 1190, 1196-97 (Ill. App. Ct. 1992); *Reeves v. Baltimore & Ohio R.R. Co.*, 526 N.E.2d 404 (Ill. App. Ct. 1992).

## 2. Personal Jurisdiction Over Azuradisc

Azuradisc argues that this Court lacks personal jurisdiction over it because the volume of sales to Illinois consists of a very small percentage of its total sales. Plaintiffs counter that because Azuradisc maintains a website, has distributed flyers and postcards as solicitations, and sold more than $25,000 in merchandise, this Court should exercise personal jurisdiction over the corporation.[5] This Court finds that it does not have jurisdiction over Azuradisc because its contacts with Illinois are insufficient.

Azuradisc contends that its connection with Illinois is of such a minimal extent that it should not reasonably have anticipated being haled into court. This Court must make two inquiries in determining whether jurisdiction exists over an out-of-state defendant, whether Illinois' long-arm statute permits the assertion of jurisdiction and whether assertion of personal jurisdiction violates due process. *Graphic Controls Corp. v. Utah Medical Products*, 149 F.3d 1382, 1385 (Fed. Cir. 1998). As has been discussed, because this is a patent case, this Court must rely on the law of the Federal Circuit in its due process analysis of Defendants' contact with Illinois. *Akro Corp. v. Luker*,

---

5 Plaintiffs assert that Azuradisc is large enough to make sales in more than twenty countries around the world and sustain a branch office in New Zealand. While this fact may submit Azuradisc to personal jurisdiction in those countries, it has no bearing on whether this Court may exercise personal jurisdiction over Azuradisc.

45 F.3d 1541, 1543-44 (Fed. Cir. 1995). "However, in interpreting the meaning of state long-arm statutes, [the Federal Circuit] elect[s] to defer to the interpretations of the relevant state and federal courts, including their determinations regarding whether or not such statutes are intended to reach to the limit of federal due process." *Graphic Controls*, 149 F.3d at 1386.

### a. Azuradisc's volume of sales

Pursuant to the Illinois long-arm statute, a defendant is subject to jurisdiction of its courts if the defendant conducted the transaction of any business within the state. 735 ILCS 5/2-209(a)(1). Where jurisdiction is predicated upon subsection (a), only causes of action arising from the enumerated acts may be asserted against a nonresident defendant. 735 ILCS 5/2-209(f). In this case, Azuradisc points to its small percentage of sales, roughly one percent, in the state to support its claim that it cannot be subject to this Court's jurisdiction. "However, no case has yet held that revenue derived from this State is the dispositive variable in resolving whether *in personam* jurisdiction may be asserted against a foreign corporation." *Hulsey v. Scheidt*, 630 N.E.2d 905, 909 (Ill. App. Ct. 1994). *See also Rokeby-Johnson v. Derek Bryant Ins. Brokers, Ltd.*, 594 N.E.2d 1190 (Ill App. Ct. 1992) (where the court found that the defendant may have earned $5 million in Illinois of no consequence to its analysis of wether the defendant was "doing business" in the state); *Kadala v. Cunard Lines*, 589 N.E.2d 802 (Ill. App. Ct 1992) (where the court held that substantial revenues earned from extensive advertising in Illinois does not alone submit a foreign corporation to jurisdiction under the "doing business" test); *Dal Ponte v. Northern Manitoba Native Lodges, Inc.*, 581 N.E.2d 329 (Ill. App. Ct. 1991) (where the court declined to find personal jurisdiction over a Canadian corporation which solicited customers at Illinois fishing shows and accepted reservations because its relationship with the state was occasional and casual); *Radosta v. Devil's Head Ski Lodge*, 526 N.E.2d 561 (Ill. App. Ct. 1988) (where the court found that defendant's advertising in Illinois, maintaining an Illinois phone number, selling its services through local ski shops, purchasing billboard space in Illinois, and participating in annual exhibitions in Illinois were insufficient because defendant's presence in the state was occasional). "Rather than emphasizing the amount

18

of the financial benefit it derives from the consumers of Illinois, the cases seem to indicate that the key consideration is the corporation's temporal relationship with the State." *Id.*

In this case, there can be no doubt that Azuradisc has no temporal relationship with Illinois. Azuradisc is not licensed to do business in Illinois, nor does it have a registered agent in the state. Azuradisc does not own property or occupy any real or personal property in Illinois. Azuradisc does not maintain an Illinois telephone number. Finally, Plaintiffs have failed to demonstrate that the small percentage of Azuradisc's sales were made as the result of a continual rather than occasional transaction of business such that Azuradisc was "doing business" in the state. *Cook Assoc., Inc. v. Lexington United Corp.*, 429 N.E.2d 847, 852-53 (Ill. 1981).

Plaintiffs also rely on the fact that Azuradisc advertised in Illinois to support their contention that personal jurisdiction exists. Plaintiffs point to 7,625 flyers which were mailed to Illinois in a one year period.[6] However, these mailings are insufficient to constitute the transaction of business in Illinois. This is because advertising and revenue alone are not a sufficient basis for the exercise of long-arm jurisdiction. *Kadala*, 589 N.E.2d at 807. This is because in this state, a significant distinction between "the transaction of business *in* Illinois and the transaction of business *with* an Illinois [resident]" exists. *Id.* (citations omitted).

> [I]f the mere payment of money, shipment of goods into, or advertisement in Illinois were sufficient to confer long arm jurisdiction it would follow that the very existence of a business relationship with an Illinois resident would automatically sustain Illinois jurisdiction. It is clear that no federal or state court would confer such a broad grant of personal jurisdiction.

*Id.* (quoting *Braasch v. Vail Assoc., Inc.*, 370 F. Supp. 809, 814 (N.D. Ill. 1973). "At best, advertising amounts only to solicitation, which ... is insufficient to submit a defendant to jurisdiction under the 'doing business' test postulated under section 2-209 of the long-arm statute." *Id.* (citing *Radosta*, 526 N.E.2d 561).

The fact that a defendant who solicits business in the State derives revenue from the

---

6 Between January 2000 and January 2001, Azuradisc sent 176,553 mailings to all fifty states, the District of Columbia, Guam and Puerto Rico. These mailings were sent by a direct mailing service company at Azuradisc's request.

State would seem to be implicit, even though not expressly discussed in the cases, as a natural result [of] successful solicitation, and not an independent factor upon which to determine that a non-resident corporation is "doing business" in the State. Moreover, defendant here did not receive any revenues in this state; all payments were received in its [Arizona] office. Accordingly, [this Court holds] that defendant is not "doing business" in Illinois so as to be amenable to [personal] jurisdiction.

*Kadala* 589 N.E.2d at 810.

### b. Azuradisc's Internet presence

Defendants argue that their website, which is accessible in Illinois, is also not sufficient to establish jurisdiction. They assert the Azuradisc website is a passive website which merely posts information over the Internet. More specifically, Azuradisc's website does not specifically invite Illinois residents to transact business with Azuradisc, instead, the website merely presents a general advertisement which is accessible worldwide. Plaintiff argues that because the website includes detailed descriptions of products and services, sales information, price lists, and toll free numbers, Defendants have sufficiently engaged with Illinois residents to warrant the exercise of jurisdiction.

It is well-settled that "no court has ever held that an Internet advertisement alone is sufficient to subject a party to jurisdiction in another state. In each case where personal jurisdiction was exercised, there [was] something more to indicate that the defendant purposefully (albeit electronically) directed his activity in a substantial way to the forum state." *Vitullo v. Velocity Powerboats, Inc.*, No. 97 C 8745, 1998 WL 246152, at *5 (N.D. Ill. April 27, 1998) (quoting *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1321 (9th Cir. 1998)) (internal quotations omitted.) The general framework of decisions regarding personal jurisdiction as the result of an Internet site is based largely on a sliding scale approach that divides Internet activities into three categories. The first category consists of situations in which a defendant clearly does business over the Internet such that the websites "are clearly interactive, allowing the transaction of business between the end user and the website's owner." *Euromarket Designs, Inc. v. Crate & Barrel, Ltd.*, 96 F. Supp.2d 824, 837 (N.D. Ill. 2000). This Court has personal jurisdiction over transactions such as these because the defendant "enters into contracts with residents of a foreign jurisdiction that

involve the knowing and repeated transmission of computer files over the Internet." *Zippo Manufactuing Co. v. Zippo Dot Com. Inc.*, 952 F. Supp. 1119, 1123-24 (W.D. Pa. 1997). The second category is a hybrid category, in which the websites are "somewhat interactive, however, not to the extent of the first category." *Euromarket*, 96 F. Supp.2d at 838 (citing *Maritz, Inc. v. Cybergold, Inc.*, 947 F. Supp. 1328 (E.D. Mo. 1996)). This is because the website "is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site." *Zippo*, at 1124. Finally, the third category deals with passive websites "where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise of personal jurisdiction." *Id.*

After considering Azuradisc's website under the sliding scale approach, it is clear that it is insufficient to subject it to this Court's personal jurisdiction. Plaintiffs claim that Azuradisc's website contains detailed product and service descriptions with toll-free numbers and advertising. The site also allows prospective clients to contact Azuradisc via e-mail. However, Plaintiffs admit that no orders can be placed directly from the website. In cases where a user can exchange information with the host computer, "the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site." *Zippo*, 962 F. Supp. at 1124. In this case, Plaintiffs have failed 'to allege facts to support a reasonable inference that electronic mail communications were made with Illinois residents, or that the communications were of the quality required by courts who have found personal jurisdiction in cases of this kind." *Transcraft Corp. v. Doonan Trailer Corp.*, No. 97 4943, 1997 WL 733905, at *9 (N.D. Ill. Nov. 17, 1997). The website allows no business transactions to be performed in terms of payment, placing of orders, etc. It merely posts information and requires that customer inquiries be performed by telephone or electronic mail. Furthermore, "national advertisements (including

those on the Internet) are insufficient to subject a defendant to jurisdiction in Illinois." *Id.* (citing *IDS*, 958 F. Supp. at 1268)). In order for Defendants to be subject to this Court's jurisdiction, Plaintiffs must establish evidence that Defendants intended their Internet advertisements to reach Illinois in particular. *Hasbro, Inc. v. Clue Computing, Inc.*, 994 F. Supp. 34, 41 (D. Mass. 1997). Plaintiffs have failed to establish such evidence. Accordingly, this Court cannot find that Defendants were purposefully serving an Illinois market and the website cannot be used to establish jurisdiction. *Transcraft*, 1997 WL 733905, at 810.

## C. Lack of Proper Venue

Defendant argues in the alternative that if personal and subject matter jurisdiction were found, this Court should transfer the case to Arizona based on improper venue. Plaintiffs assert that venue is proper under 28 U.S.C. §1391, and cites a Federal Circuit case which allows for venue if personal jurisdiction is found over Defendants. *North American Phillips Corp. v. American Vending Sales, Inc.* 35 F.3d 1576, 1577 n.1 (Fed. Cir. 1994). However, this Court has determined that it lacks personal jurisdiction over Defendants, therefore, the motion to transfer is **dismissed as moot.**

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss for Lack of Jurisdiction (doc. #4) is **GRANTED.** Defendants' Motion to Transfer for Improper Venue (doc. #4) is **DISMISSED as moot.** This case is accordingly **DISMISSED.**

**IT IS SO ORDERED.**
**DATED:** July 23, 2001

WILLIAM J. HIBBLER, DISTRICT JUDGE

22